**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sara Evelyn Taggart, | No. CV-13-01614-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W Colvin, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Sara Evelyn Taggart seeks judicial review of the Commissioner's decision finding her not disabled. Doc. 17. The motion is fully briefed and no party has requested oral argument. For the reasons that follow, the Court will affirm Defendant's decision.

**I.    Background.**

Plaintiff began using illegal drugs as a teenager. Tr. 44, 319, 801. She began experiencing symptoms of depression when she was 17 years old. Tr. 319. Plaintiff worked as a hairstylist after being discharged from the military for shoplifting from a post exchange while on active duty. Tr. 297, 319, 549, 812, 815. Plaintiff continued to use illegal drugs, particularly methamphetamine, for much of her adult life. Illegal drug use, coupled with failure to take proper medications, resulted in Plaintiff's mental deterioration. Tr. 338-40, 342-45, 349-55, 360-65, 370-80, 389. When Plaintiff abstained from illegal drugs and took prescribed medications, her symptoms improved. Tr. 316-20. Plaintiff has consulted many physicians regarding her mental health symptoms, including depression, schizoaffective disorder, auditory hallucinations, mood

disorder, generalized anxiety disorder, and methamphetamine dependence in full remission. Treating physicians have repeatedly found that Plaintiff is stable with treatment (Tr. 553, 555, 557, 559, 561, 563, 565, 567, 569-70, 698, 756, 780, 782, 1027), but that her symptoms increase when she resumes amphetamine abuse or fails to take her medications (Tr. 406-07, 412-13, 508, 571-72, 644, 739).

Plaintiff filed an application for disability insurance benefits on September 9, 2010. Tr. 167. Plaintiff alleged disability beginning on July 24, 2010. *Id.* After a hearing on December 19, 2011, an Administrative Law Judge ("ALJ") issued an opinion on January 20, 2012, finding Plaintiff not disabled. Tr. 23. Plaintiff's request for review was denied by the Appeals Council and the ALJ's opinion became the Commissioner's final decision. Tr. 1.

**II.    Legal Standard.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

Determining whether a plaintiff is disabled involves a sequential five-step evaluation. The claimant must show (1) she is not currently engaged in substantial gainful employment, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing her past work. If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to

step five.  If the claimant establishes her burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

**III.   Analysis.**

   **A.   Plaintiff's Subjective Testimony.**

At the administrative hearing, Plaintiff testified that she had not used methamphetamines since August 2010.  Tr. 45-46.  She testified that she attended monthly medication management appointments at Magellan Health Services and checked in monthly with her case manager at Partners in Recovery.  Tr. 46.  She also testified that medication helped "tremendously" to relieve her symptoms.  Tr. 47.  Plaintiff stated that she had recently stopped attending counseling, but that she hoped to find a new counselor.  Tr. 46.  She reported that she generally stayed at home and was forced to drop out of school at Mesa Community College because she found the assignments and deadlines overwhelming.  Tr. 47.  Plaintiff claimed that her daily routine involved waking up around 11 a.m. or noon, eating a snack, and then shutting her blinds and locking her doors so that no one could look in at her.  She testified that she would then lie in bed "spacing out" for most of the day and not realize that time is going by.  Tr. 48-49.  Plaintiff stated that she did not grocery shop for herself.  Tr. 49.  She also stated that she groomed herself only once or twice a week and that she did not have any friends.  Tr. 52.  Plaintiff testified that she could not work because she had difficulty following a schedule (Tr. 49) and being around others (Tr. 52).  Plaintiff admitted that she drove herself to her doctor's appointments and searched for jobs on the internet.  Tr. 49, 54-55.

The ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's subjective testimony.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341,

344 (9th Cir. 1991) (en banc)). If the claimant meets this first test, and there is no evidence of malingering, then the ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may consider the following factors: the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

At the first step, the ALJ found that "[Plaintiff]'s medically determinable impairment could reasonably be expected to cause the alleged symptoms[.]" Tr. 20. At step two, however, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. *Id*. The ALJ provided many reasons to buttress this conclusion. *See* 20 C.F.R. § 404.1529(c)(4) (ALJ must consider conflicts between a claimant's statements and signs and laboratory findings); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted).

The ALJ addressed Plaintiff's claim that she could not work because she had trouble interacting with others, difficulty concentrating, and was unable to adhere to a schedule. Tr. 20. The ALJ noted that Plaintiff regularly attended group therapy sessions and was able to participate meaningfully in the sessions despite her assertion that she had great difficulty getting along with others. Tr. 20-21, 784, 957, 1068. The ALJ indicated that no provider had described difficulty interacting with the claimant and that her ability to concentrate was consistently rated as "fair" or "good." Tr. 800, 896, 898, 991, 997, 1001. The ALJ further noted that Plaintiff rarely missed an appointment in spite of her alleged problem adhering to a schedule. Tr. 20-21.

The ALJ also noted that treatment providers frequently have attributed Plaintiff's periodic relapses to Plaintiff's failure to take medications regularly. Tr. 21, 991, 1004, 1018. The ALJ noted that Plaintiff had made statements to healthcare providers that conflicted with her hearing testimony. Tr. 21. For example, at the hearing she described her day-to-day mood as depressed or anxious, but she routinely told healthcare providers that she felt stable on her medications. Tr. 811, 1023. She also stated at the hearing that she could hardly care for herself and that she lives an isolated existence, but there were many examples in the record where she reported that she was able to perform all activities of daily living, spent time with friends, and had a boyfriend. Tr. 841, 843, 892, 905, 913, 932, 1000, 1067, 1069.

The Court concludes that the ALJ offered specific, clear, and convincing reasons for discounting Plaintiff's subjective testimony as to the intensity, persistence and limiting effects of her symptoms. Plaintiff claims that the ALJ discounted Plaintiff's subjective testimony merely because it was unsupported by objective medical evidence. *Id.* at 6. Although an ALJ may not reject Plaintiff's statements solely because they are not substantiated by objective medical evidence, 20 C.F.R. § 404.1529(c)(2), the ALJ must also consider whether there are inconsistencies between Plaintiff's testimony, the medical evidence, and previous statements made by Plaintiff, 20 C.F.R. § 404.1529(c)(4), *Carmickle*, 533 F.3d at 1161. The ALJ identified valid reasons for discounting Plaintiff's testimony.

**B.     Discounting Treating Physician Evidence.**

On December 5, 2011, Dr. Chern, Plaintiff's treating psychiatrist, completed a questionnaire as to Plaintiff's RFC. He opined that Plaintiff had a marked limitation in her abilities to understand, remember, and follow both simple and complex instructions, make judgments on simple work related decisions, and interact appropriately with the public. He also opined that Plaintiff's ability to interact appropriately with supervisors and coworkers, respond appropriately to work pressures, and respond appropriately to changes in the workplace were markedly impaired. Tr. 1114-15. The ALJ accorded

1  these opinions "some weight" because she found that portions of Dr. Chern's opinions
2  "are well supported by the evidence while others are extreme given the objective findings
3  contained in the record." Tr. 21.

4       The Ninth Circuit distinguishes between the opinions of treating physicians,
5  examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821,
6  830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating
7  physician's opinion and more weight to the opinion of an examining physician than to
8  one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th
9  Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when
10 evaluating opinion evidence, including length of examining or treating relationship,
11 frequency of examination, consistency with the record, and support from objective
12 evidence). The opinion of a treating or examining physician can only be rejected for
13 "clear and convincing" reasons if it is not contradicted by another doctor's opinion.
14 *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). The
15 contradicted opinion of a treating or examining physician "can only be rejected for
16 specific and legitimate reasons that are supported by substantial evidence in the record."
17 *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

18       The ALJ found that Dr. Chern's opinion was contradicted by the opinion of Dr.
19 DeSoto. Tr. 21, 799-804. Thus, the ALJ could discount Dr. Chern's opinion by
20 identifying specific and legitimate reasons that are supported by substantial evidence in
21 the record. *Lester*, 81 F.3d at 830-31.

22       Although Dr. Chern opined that Plaintiff was moderately limited in her ability to
23 carry out both simple and complex instructions, Dr. DeSoto's psychological evaluation
24 indicated that Plaintiff could carry out simple instructions. Tr. 21, 800. As to Dr.
25 Chern's opinion that Plaintiff had marked limitations in her ability to interact with
26 supervisors, co-workers, and the public, the ALJ found that Plaintiff's ability to get along
27 with treatment providers, participate in group therapy, and maintain friendships suggests
28 that she can interact with supervisors and coworkers. Tr. 21. Notwithstanding the ALJ's

finding that Plaintiff was able to maintain a relatively stable social life, the RFC reflects the ALJ's willingness to give Plaintiff and Dr. Chern the benefit of the doubt by finding that Plaintiff should have no contact with the general public and only necessary contact with co-workers and supervisors. The ALJ also discounted Dr. Chern's opinion that Plaintiff would be unable to respond appropriately to change and deal with pressure because the ALJ found that there was no objective evidence for this finding. *Id.* The ALJ referenced Magellan treatment records, finding that Plaintiff had at least "fair" concentration. *Id.* In fact, the evaluation by Dr. DeSoto cited by the ALJ found only mild limitations in sustained concentration and persistence and no limitations in adapting to change. Tr. 804. To support this finding, the ALJ noted that the record shows that when Plaintiff abstained from illegal drug use and took her proscribed medications, her symptoms were alleviated. Tr. 21.

The Court finds that the ALJ provided specific and legitimate reasons for discounting portions of Dr. Chern's opinion, and that the reasons are supported by substantial evidence. Plaintiff argues that substantial evidence in the record suggests that the ALJ should have assessed an RFC that was more consistent with Dr. Chern's opinion. Doc. 18 at 15. Because the Court finds that the ALJ's decision is supported by substantial evidence, the Court will not address Plaintiff's arguments. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

**C.     Limitations Stemming from Workplace Stress or Pressures.**

Plaintiff asserts in her reply for the first time that the ALJ failed to consider Plaintiff's inability to deal with workplace stress and changes in the RFC assessment. Doc. 19 at 1. The Court will not consider arguments made for the first time in a reply brief. *See Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 n.6 (9th Cir. 2004). In any event, the ALJ specifically addressed Plaintiff's ability to respond to change in her RFC assessment as discussed above. Tr. 21.

**IT IS ORDERED:**

1. Plaintiff's appeal brief (Doc. 17) is **denied**.
2. Defendant's decision denying benefits is **affirmed**.
3. The Clerk shall terminate this action.

Dated this 31st day of January, 2014.

David G. Campbell
United States District Judge